IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOLEAN H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:21-cv-598-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for DIB in June 2016, alleging she became unable to work because of her disabling condition on January 1, 2016 (Tr. 170). Plaintiff's claim was denied through the administrative process following a hearing, resulting in an unfavorable ALJ decision dated October 26, 2018 (Tr. 12-36). The Appeals Council affirmed the ALJ's decision in October 2019 (Tr. 1-6). The claim proceeded to this Court, resulting in the entry of an Order dated June 15, 2020, remanding the claim to the Commissioner for hearing (Tr. 785). In accordance with the District Court's remand order, the Appeals Council instructed the ALJ to hold a new hearing and further

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 12).

consider the claimant's maximum residual functional capacity, obtain evidence from an appropriate medical expert related to functional limitations if necessary, further evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations, and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Tr. 795).  Upon rehearing, the ALJ issued an unfavorable decision on December 18, 2020 (Tr. 686-712).  The Appeals Council denied Plaintiff's request for review, making the ALJ decision final (Tr. 679-85).  Accordingly, Plaintiff has exhausted all administrative remedies.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ's decision is not supported by substantial evidence.

2. The RFC is not supported by substantial evidence.

3. The ALJ's credibility determination is not supported by substantial evidence.

## Applicable Legal Standards

To qualify for DIB a claimant must be disabled within the meaning of the applicable statutes[3].  Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a).

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  As is relevant to this case, the DIB and SSI statutes and regulations are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.  Most citations herein are to the DIB regulations out of convenience.

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work?   20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled.   A negative answer at any step, other than at step three, precludes a finding of disability.  The plaintiff bears the burden of proof at steps one through four.   Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).    This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into

consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

In his opinion, ALJ Scurry followed the five-step analytical framework described above. The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020 (Tr. 691). The ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2016 (Tr. 691).

The ALJ found that Plaintiff has the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease; sacroiliitis; osteoarthritis; left foot arthritic changes and spurs; obesity; myofascial pelvic floor dysfunction; pudendal neuralgia; and obstructive sleep apnea (Tr. 691). However, the ALJ found that these impairments do not meet or equal a listed impairment.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following exceptions and/or qualifications: never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch and crawl; and avoid concentrated exposure to noise and hazards such as unprotected heights.

Based on the testimony of a vocational expert ("VE"), the ALJ found Plaintiff could not do her past relevant work as a security guard or livestock sales representative. However, she was not disabled because she is able to do other jobs that exist in significant numbers in the national

economy.

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

1. **Agency Forms**

Plaintiff was born in 1975 and was 45 on the date of the ALJ's December 2020 decision (Tr. 170). Plaintiff indicated she was disabled because of back problems, nerve damage, anxiety, depression, hip issues, and migraines. She was 5'7" tall and weighed 350 pounds. She indicated that because of her condition she stopped working on December 31, 2015 (Tr. 191). She had received her GED and had worked in home care, in a factory, kennel cleaning, and with horses (Tr. 192).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the November 23, 2020 hearing (Tr. 689). Plaintiff testified she lives with her adult daughter and boyfriend (Tr. 721). She experiences pain in her legs, back, neck, hips, and arms (Tr. 727). Plaintiff's pain was treated with steroid injections, but she has only experienced limited relief from the same, so the treatment plan is to "burn the nerve" (Tr. 728). Plaintiff was told surgery may make her better or worse (Tr. 731). One surgeon told Plaintiff she would need to lose weight before he would perform the procedure (Tr. 731).

Plaintiff reclines or lays down flat approximately fifty percent of the time over the course of the day (Tr. 731). She does not read as it "doesn't make any sense" and she usually sits in her

chair in a stupor (Tr. 729). Plaintiff may do one load of laundry a week, but often forgets to move the load from the washer to the dryer (Tr. 729).

A vocational expert (VE) also testified. The VE testified that a person with Plaintiff's RFC assessment could not do Plaintiff's past work, but that jobs such as assembler, document preparer, and tube operator, would be available that exist in the national economy (Tr. 737). The VE also testified that if a hypothetical individual with Plaintiff's RFC assessment required unscheduled breaks and absences at will on an unpredictable basis, there would not be any work for them in the national economy (Tr. 738).

Finally, the Court notes Plaintiff's counsel moved to amend her onset date at the hearing from January 1, 2016 to April 7, 2017, the date on which an MRI of Plaintiff's lumbar spine was completed (Tr. 733). It does not appear that this request to move the onset date was granted as the ALJ's decision still referred to the alleged onset date as January 1, 2016. The parties do not address this issue in their briefing.

### 3. Relevant Medical Records

In 2015, prior to the alleged disability onset date, an MRI of Plaintiff's lumbar spine was completed that showed bilateral radiculopathy without sensory or motor deficit, and lumbar degenerative disk disease, with a small midline disk herniation at L5-S1 (Tr. 300-01). Plaintiff's condition was treated with epidural steroid injections, but it was recommended she consult with a spine surgeon (Tr. 301). An MRI of Plaintiff's cervical spine in 2015 indicated mild foraminal narrowing at C4-C5, but no central canal stenosis or neural foraminal narrowing.

Plaintiff reported to the emergency department in April 2016 complaining of chronic back pain located in the coccyx area that radiated to the right and left legs (Tr. 315). On examination,

Plaintiff had full range of motion with no parathesis or numbness (Tr. 315). She was diagnosed with sacroiliitis and, despite the provider's concerns about opioid use in chronic pain, she was given IV Dexamethasone and Nalbuphine, and discharged home (Tr. 316).

Plaintiff presented to the emergency department again in June 2016 reporting pain after swimming (Tr. 304). There were no neurological deficits, and her pedal push/pull was strong (Tr. 304). Plaintiff was administered Tramadol, Orphenadrine, and Methylprednisolone (Tr. 305). A notation in Plaintiff's medical record indicated Plaintiff stated, "I should have came in and fought for my Nubain" (Tr. 307).

Plaintiff established care with a new pain management specialist, Dr. Shane Fancher, in July 2016 (Tr. 451). An MRI showed some mild neural foraminal stenosis and a smaller disk bulge at L3 with some arthritic changes (Tr. 451). Plaintiff's straight leg was positive, and she was tender in the lateral groove, but was in no acute distress and her neurological systems were intact (Tr. 451). Dr. Fancher performed transforaminal lumbar epidural steroid injections on July 15 and August 22, 2016 (Tr. 447, 476).

An MRI of Plaintiff's cervical spine was taken in February 2017 that showed foraminal narrowing, but no spinal canal narrowing (Tr. 514). The findings were compatible with some form of chronic sinusitis (Tr. 514). Plaintiff saw her primary care physician, Dr. Jason Jerabek, multiple times in 2017 for complaints of chronic low back pain and neck pain (Tr. 520-41). In July 2017, Dr. Jerabek diagnosed Plaintiff with foraminal stenosis of lumbar region and indicated he would see if a neurosurgeon would evaluate Plaintiff to see if she could be a surgical candidate (Tr. 535). In October 2017, Plaintiff reported to Dr. Jerabek that she had seen a neurologist at SLU, but they did not see "eye- to eye" and she walked out at the end of the exam (Tr. 520). At

this October 2017 exam, Dr. Jerabek ordered an EMG/NCV study to address Plaintiff's paresthesia of bilateral legs (Tr. 520).

On June 27, 2018, Plaintiff presented to Dr. Jerabek with complaints of neck pain for which she had gone to the emergency department (Tr. 1164). Plaintiff reported she was given fentanyl for her pain in the emergency department, but indicated it did not help (Tr. 1164). In October 2018, Plaintiff saw Dr. Jerabek and complained of bilateral arm pain that she believed originated in her neck (Tr. 1168). Dr. Jerabek's examination revealed a normal neck examination with moderately reduced range of motion in Plaintiff's lumbar spine (Tr. 1168-71).

On May 6, 2019, Plaintiff was examined by Nurse Practitioner Billie Toland for complaints of musculoskeletal pain (Tr. 1193). Plaintiff was again seen for similar complaints of pain in August 2019 by Dr. Jerabek, wherein Plaintiff reported her Demerol shots were lasting only 1-2 days (Tr. 1205). Plaintiff's physical examination was essentially normal (Tr. 1208-09). Plaintiff again saw NP Toland on October 17, 2019 for complaints of pain (Tr. 1216). Plaintiff indicated she was upset because her disability claim was denied and she has pain every day and she felt the denial was Dr. Jerabek's fault (Tr. 1216). Plaintiff was notified that her standing order for Demerol had expired and neither NP Toland nor Dr. Jerabek would renew the same (Tr. 1216). Plaintiff saw NP Toland in December 2019 related to sleep issues and Toland noted she had a "fairly harsh" conversation with Plaintiff regarding her behaviors and she counseled Plaintiff to get out of bed during the day and take pain medication if necessary (Tr. 1221). Plaintiff saw NP Toland again on March 13, 2020 complaining of musculoskeletal pain, specifically in her right shoulder (Tr. 1226). Plaintiff refused imaging and physical therapy and NP Toland suggested Plaintiff go to pain management for further evaluation (Tr. 1226). Plaintiff's physical

examination on this date showed mildly reduced range of motion (Tr. 1229). NP Toland administered an injection for the pain (Tr. 1230). Upon Plaintiff's request, NP Toland administered another injection on April 17, 2020 (Tr. 1232).

Plaintiff presented to the emergency department on June 16, 2020 complaining of back pain (Tr. 1242). On examination, Plaintiff had tenderness at the right low back; range of motion was painful with all movement; vertebral tenderness was not appreciated; muscle spasms were not present; Plaintiff refused to allow straight leg raise testing; there were no motor or sensory deficits present; and she had a steady gait (Tr. 1246). Plaintiff was given an injection and a prescription for Hydrocodone (Tr. 1246). Plaintiff again reported to the emergency department on June 19, 2020, complaining of back pain (Tr. 1048). On examination, Plaintiff had an antalgic gait; increased tenderness to her lower lumbar sacral region; right SI joint with point tenderness to right gluteus max; and increased pain with right straight leg raises (Tr. 1051). The clinical impression was acute midline low back pain with right-sided sciatica (Tr. 1052). Plaintiff was issued prescription medication for pain and muscle spasms (Tr. 1053).

An updated MRI of Plaintiff's cervical spine was taken in June 2020 that showed mild degenerative changes at the mid-cervical levels with mild disc bulges at C5-6 and C6-7, and mild facet disease at C3-4 and C4-5 with mild narrowing of the neural foramen (Tr. 1084-85). Plaintiff received cervical steroid injections at C5-6 in July, August, and September 2020 (Tr. 1074-1081).

On October 28, 2020, Plaintiff presented to Dr. Eaton for a pain consultation (Tr. 1490). Plaintiff reported that her neck and low back pain was gradually worsening (Tr. 1490). Plaintiff described the pain in her neck as primarily across the right-side top of her head radiating down the back of her neck and into her shoulder and occasionally down her arm (*id.*). The pain in her low

back was on the right-hand side and radiated laterally and anteriorly down her right side as far as her knee (Tr. 1490).  On examination, Plaintiff was found to have 5/5 muscle strength; 2/4 deep tendon reflexes; grossly intact sensations; tenderness over the cervical facets; no tenderness to palpation over greater and lesser occipital nerves; and normal cervical range of motion (Tr. 1493).  The assessment included: cervical facet joint arthropathy/spondylosis; history of cervical radiculopathy; lumbar radiculopathy; lumbar facet joint arthropathy; and chronic pain (Tr. 1493-94).  Dr. Eaton recommended a repeat lumbar MRI and diagnostic cervical medial branch blocks (Tr. 1494).  An MRI of Plaintiff's lumbar spine was conducted on November 12, 2020, and revealed multilevel degenerative disc disease and facet arthropathy (Tr. 1487).

    **4. Non-Examining State Agency Consultant Physicians**

Dr. Richard Lee Smith reviewed Plaintiff's treatment records in August 2016 and opined that Plaintiff was not disabled and was capable of light work.  Dr. Smith opined that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; occasionally climb ramps/stairs; never climb ropes, ladder, scaffolds; occasionally stoop, kneel, crouch, and crawl; and avoid concentrated exposure to noise and hazards (Tr. 72-82).

Dr. Sumanta Mitra reviewed Plaintiff's file on a request for reconsideration in November 2016 due to a change in her physical condition.  Dr. Mitra reviewed Plaintiff's updated records and agreed with the limitations set forth in Dr. Smith's opinion.

    **5. Treating Physician Dr. Jason Jerabek – Residual Functional Capacity Report**

In this document, which was apparently created and submitted into evidence by Plaintiff's attorney, Dr. Jerabek noted Plaintiff's diagnoses of: disk herniation – lumbar spine; spinal stenosis

– cervical spine; foraminal stenosis – cervical and lumbar region; paresthesia – bilateral legs; and muscle spasms – bilateral lower extremities (Tr. 668). Dr. Jerabek did not provide any response to the second question on this form questioning whether Plaintiff's subjective complaints are credible since he began treating her (Tr. 668). Dr. Jerabek did respond to questions three and four. This form also includes the following paragraphs; however, they did not require any input from Dr. Jerabek:

> [Plaintiff] would not be able to perform any work, even at the sedentary work level, which requires only minimal lifting of less than 10 pounds and standing and walking less than 2 hours in an 8-hour workday, as of January 1, 2016.
>
> [Plaintiff] subjectively states that, since at least January 1, 2016, she would not be able to meet the demands of full-time employment at any exertional level due to her physical impairments, including side-effects of her pain medications.

## Analysis

Plaintiff first asserts the ALJ's decision is not supported by substantial evidence. In support of this point, Plaintiff complains the ALJ did not fully develop the record by failing to obtain evidence from a medical expert or otherwise obtain evidence concerning whether Plaintiff's limitations equaled listing 1.04. Counsel asserts numerous requests were made at the hearing for a medical expert and the Appeals Council directed the ALJ to obtain evidence from an appropriate medical expert if necessary.

For clarification, the Court notes that the District Court's remand order directed the ALJ to evaluate whether Plaintiff could perform her past relevant work or a significant number of jobs existing in the national economy. The Appeals Council's directive also noted an expert may be employed to obtain evidence related to the nature and severity of, and functional limitations

resulting from, the Plaintiff's physical impairments. In these orders, there was no indication of any issues with the ALJ's listing determination.

In any event, Plaintiff now asserts the ALJ's finding that her spinal degeneration did not equal the criteria of Listing 1.04 is inadequate. Plaintiff asserts her overlap of symptoms related to the multi-level stenosis of her spine and morbid obesity deserve consideration by a medical expert as to whether they reach the necessary requirements of equaling 1.04.

Defendant did not specifically address the listing argument in his brief. However, Defendant generally contends the additional medical evidence submitted after the state agency consultants' review did not "change the picture" so much as to warrant or require a new medical opinion.

A finding that a claimant's condition meets or equals a listed impairment is a finding that the claimant is presumptively disabled. The Listings are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. In order to be found presumptively disabled, the claimant must meet all of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. §404.1525(d). The claimant bears the burden of proving that he meets or equals a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). When evaluating whether an impairment is presumptively disabling under a listing, the ALJ "must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). The Seventh Circuit has highlighted three requirements for an ALJ's step three determination to meet the "substantial evidence" standard upon review. First, the ALJ "must discuss the listing by name." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir.

2004). Second, the ALJ is required to "offer more than a perfunctory analysis of the listing." *Id.* Finally, because the determination of "[w]hether a claimant's impairment equals a listing is a medical judgment," the ALJ "must consider an expert's opinion on the issue." *Id.* at 670.

Here, the ALJ addressed Listing 1.04 by name and indicated Plaintiff's spinal degeneration did not meet the criteria by restating the listing requirements. The ALJ also noted that he had considered the impact of Plaintiff's obesity and found that the evidence failed to show that her obesity increased the severity of her other impairments to an extent that the combination of the same would meet a listing.

The Court concludes this cursory statement does not meet the "substantial evidence" standard. The brief explanation given by the ALJ in regard to Listing 1.04 is clearly perfunctory. While the consulting physicians, Drs. Smith and Mitra indicated they had considered Listing 1.04, there is no discussion concerning the same. Moreover, the Court cannot find any medical opinion that addresses the issue of equivalency. The Seventh Circuit has held that an ALJ's assumption about equivalency "cannot substitute for evidence and does not support the decision to deny benefits." *Barnett*, 381 F.3d at 671. Accordingly, the Court cannot determine whether the ALJ's step three determination is supported by substantial evidence. The ALJ's failure to consider whether Plaintiff's impairments equaled Listing 1.04 requires remand.

Next, Plaintiff asserts the ALJ's RFC findings are not supported by substantial evidence. More specifically, Plaintiff contends the ALJ impermissibly "played doctor" in evaluating MRIs conducted after the state agency consultants' review and assessing Plaintiff's residual functional capacity without input from a medical expert. Plaintiff asserts the ALJ was not qualified to conclude the MRI results were consistent with his assessment of Plaintiff's condition and her RFC.

Plaintiff further asserts that based on updated imaging, the ALJ indicated it was more reasonable to limit Plaintiff to sedentary work, but asserts there was no discussion of how the evidence or what evidence supported this determination.

Defendant contends the ALJ's RFC was properly supported and he was not required to obtain a new medical opinion merely because additional records were submitted. More specifically, Defendant asserts the subsequent MRI records did not "change the picture" of Plaintiff's condition so the ALJ could still partially rely on the state agency determinations. Defendant also asserts the ALJ never equated MRI findings to impairments; but rather reasonably added greater limitations by finding Plaintiff could do a range of sedentary work instead of light work due to a combination of impairments.

The crux of the issue is whether Plaintiff's MRIs that post-date the state agency consultants' review of Plaintiff's records warrant a medical opinion to support the ALJ's RFC determination. Plaintiff relies on *Goins v. Colvin*, wherein the ALJ failed to submit the claimant's 2010 MRI to the consulting physicians for review, despite said MRI being new and "potentially decisive medical evidence." 764 F.3d 677, 680 (7th Cir. 2014). The Seventh Circuit deemed this a "critical failure" and noted the only MRI available to the consulting physicians was taken in 1998 and, when compared to the 2010 MRI, included significant changes, such as degeneration all along the cervical and lumbar regions of the spine compared to degenerative disease in only one disk. *Id.* at 680, 682.

Defendant points to *Stage v. Colvin*, wherein the Seventh Circuit found that a doctor's report diagnosing the claimant with a hip deformity, a restricted range of motion, and the need for a total left hip replacement "changed the picture so much that the ALJ erred by continuing to rely

on an outdated assessment by a non-examining physician and by evaluating the significance of the [doctor's] report." 812 F.3d 1121, 1125 (7th Cir. 2016). In citing *Stage*, Defendant asserts the MRI results at issue here do not present such a change in circumstance to warrant further assessment by a physician. The Court disagrees. Much like the ALJ, the undersigned is not a physician and is not qualified to understand the differences noted in the MRIs that were reviewed by the state agency consultants and those, such as the MRI taken in November 2020, that were not.

It is well settled that "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). In this instance, it appears the ALJ was interpreting Plaintiff's more recent MRI results to evaluate Plaintiff's limitations. Without the input of a medical expert, the ALJ's conclusion regarding Plaintiff's limitations is not supported by the record.

Finally, Plaintiff asserts the ALJ failed to build a logical bridge between the evidence and his conclusion that Plaintiff's testimony was not credible.

ALJs use a two-step process for evaluating a claimant's impairment-related symptoms. SSR 16-3p, 2017 WL 5180304, at *1. First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms. *Id.* at *3. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4.

"In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms;

statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). The findings of the ALJ as to the accuracy of the plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

Plaintiff asserts the ALJ did not explain whether Plaintiff's daily activities were consistent or inconsistent with the limitations she alleges and, if inconsistent, how so. Plaintiff further argues the ALJ focused on Plaintiff's ability to ambulate and mentions her ability to perform some daily activities, but did not link these activities to Plaintiff's specific claims.

Defendant contends the ALJ's analysis of Plaintiff's credibility was adequately supported and that the ALJ considered factors such as Plaintiff's treatment as a whole, use of medications, physical examinations, mental status examinations, and activities in finding Plaintiff was functional in the record. Defendant cites specific instances wherein the ALJ noted inconsistencies between Plaintiff's subjective reports and corresponding objective examinations, such as when

Plaintiff arrived ambulatory to the ER complaining of the worst pain she had ever had and her examination revealed full extension and normal range of motion with no functional deficits.

An ALJ is not required to do a "point-by-point credibility assessment" as long as she "consider[ed] the relevant evidence, compare[d] the consistency of [Plaintiff's] testimony against the objective record and ground[ed] h[er] credibility finding in medical evidence." *McCurrie v. Astrue*, 401 F. App'x 145, 149 (7th Cir. 2010). Here, the ALJ conducted a thorough analysis of Plaintiff's medical history and objective medical findings, specifically noting that despite Plaintiff's complaints of extreme pain, Plaintiff's treating sources failed to support the intensity, persistence, and limiting effects of her alleged symptoms. As mentioned by Defendant, the ALJ specifically noted that throughout the record Plaintiff was functional and ambulatory, even managing to ride a horse in 2017.

For these reasons, the Court finds the ALJ's assessment of Plaintiff's subjective complaints was adequately supported. However, because of the errors cited above concerning the decision at step three and inadequate support for the RFC determination, remand is required.

## Conclusion

For these reasons, Plaintiff's request for a remand is **GRANTED IN PART** as discussed above. The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: March 30, 2023**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**
